IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FREDI GARCIA, *et al.* )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>AUDUBON COMMUNITIES MANAGEMENT, )<br>LLC, *et al.* )<br>)<br>Defendants. )<br>)<br>)<br>) | Civ. No. 08-1291<br>(SECT. C, MAG. 4)<br><br>**Collective Action** |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' SECOND EMERGENCY MOTION FOR U-VISA CERTIFICATION

For the reasons set forth herein, Plaintiffs respectfully request that the Court certify that Plaintiffs Emilio Salguero-Sarmiento,[1] Misael Garcia-Rodriguez,[2] and Victor Manuel Maldonado-Arita[3] (hereinafter collectively referred to as "the moving Plaintiffs") "have been helpful, are being helpful, or likely will be helpful" in the investigation or

---

[1] As set forth in his attached declaration (Pl. Ex. 8, Declaration of Emilio Salguero-Sarmiento ("Salguero-Sarmiento Decl.") at ¶ 1), Mr. Salguero-Sarmiento normally uses only his paternal last name and is therefore listed in the caption of this lawsuit as "Emilio Salguero".

[2] As set forth in his attached declaration (Pl. Ex. 9, Declaration of Misael Garcia-Rodriguez ("Garcia-Rodriguez Decl.") at ¶ 1), Mr. Garcia-Rodriguez normally uses only his paternal last name and is therefore listed in the caption of this lawsuit as "Misael Garcia".

[3] As set forth in his attached declaration (Pl. Ex. 10, Declaration of Victor Manuel Maldonado-Arita ("Maldonado-Arita Decl.") at ¶ 1), Mr. Maldonado-Arita generally uses only is paternal last name and is known as "Manuel Maldonado". Mr. Maldonado is therefore listed in the caption of this lawsuit as "Manuel Maldonado".

prosecution of Defendants' violations of federal forced labor and involuntary servitude prohibitions. Such Judicial certification would allow the moving Plaintiffs to petition the U.S. Customs and Immigration Service for U visa relief, which – if granted – would permit them to remain in the United States to complete presentation of their forced labor and involuntary servitude claims under the Trafficking Victims Protection Act. These claims are pending before this Court as Counts I and II of the Plaintiffs' complaint. (Doc. 1 ¶¶ 75-84.)

The certification of the moving Plaintiffs' U visas requires immediate consideration because, as set forth in their Complaint, these Plaintiffs were reported to U.S. Immigration and Customs Enforcement ("ICE") in unlawful retaliation for their having requested payment of wages through their counsel. (Doc. 1 ¶¶ 62-9, 108-115.) The moving Plaintiffs have been placed in removal (or deportation)[4] proceedings as a result and are in imminent danger of being removed to Honduras, thereby frustrating their ability to participate in this proceeding or otherwise redress the involuntary servitude crimes which they suffered. The moving Plaintiffs respectfully request that this Court expedite consideration of this motion.

I. **Procedural History**

Plaintiffs filed the instant lawsuit on March 17, 2008. All Defendants have now been served with the Summons and Complaint in this action. (Docs. 1-2); (Docs. 21-23). The Defendants will file their answers on or before April 30, 2008. (Doc. 18.)

---

[4] Prior to April 1997 deportation and exclusion were separate removal procedures. The Illegal Immigration Responsibility Act of 1996 consolidated these procedures which are now collectively referred to as removal.

1

## II. This Court Should Certify Plaintiffs' Applications for U Visa Relief.

### A. The Moving Plaintiffs Offer a Preliminary Showing that They Are Qualified for U Nonimmigrant Visas.

Congress created the U visa nonimmigrant classification with the passage of the Victims of Trafficking and Violence Prevention Act of 2000 ("TVPA"). See Pub. L. No. 106-386, § 1513, 114 Stat. 1464, 1533-37; see also 72 FR 53014-15. "The purpose of the U nonimmigrant classification is to strengthen the ability of law enforcement agencies to investigate and prosecute such crimes as . . . trafficking in persons, while offering protection to alien crime victims in keeping with the humanitarian interests of the United States." 72 FR 53014 (summary of U.S. Citizenship and Immigration Services comments on interim U visa regulations). To be eligible for U visa relief, an alien (1) must have "suffered substantial physical or mental abuse as a result of having been a victim of criminal activity" enumerated by the Act; (2) must "possess[] information" concerning the qualifying criminal activity; and (3) must have "been helpful, is being helpful, or is likely to be helpful" in the investigation or prosecution of the qualifying criminal act. See 8 U.S.C. § 1101(a)(15)(U)(i). One of the qualifying criminal acts is involuntary servitude, as well as "any similar activity in violation of federal, state, or local criminal law. See 8 U.S.C. § 1101(a)(15)(U)(iii).

#### 1. The Moving Plaintiffs Are Victims of Involuntary Servitude

Petitioners for U nonimmigration status must be a "victim" of one of the enumerated offenses. See 8 U.S.C. § 1101(a)(15)(U)(iii)(1). U.S. Department of Homeland Security ("DHS") regulations define a "victim of qualifying criminal activity" as "an alien who has suffered direct or proximate harm as a result of the commission of

2

qualifying criminal activity." 8 C.F.R. § 214(a)(14). The moving Plaintiffs are direct victims of involuntary servitude and the similar crimes of forced labor and trafficking with respect to peonage, slavery, involuntary servitude, or forced labor.

Any person who "knowingly and willfully holds to involuntary servitude" another person has violated has violated federal criminal law. See 18 U.S.C. § 1584. Congress has defined involuntary servitude as

> a condition of servitude induced by means of--
>
> (A) any scheme, plan, or pattern intended to cause a person to believe that, if the person did not enter into or continue in such condition, that person or another person would suffer serious harm or physical restraint; or
>
> (B) the abuse or threatened abuse of the legal process.

22 U.S.C. § 7102(5).

Prior to the passage of the TVPA, the U.S. Supreme Court had adopted a narrow interpretation of the involuntary servitude prohibition, requiring actual physical or legal coercion. See United States v. Kozminski, 487 U.S. 931, 949-52 (1988). When Congress enacted the TVPA, it overturned, on invitation of the Kozminski Court, the requirement that an actual objective threat occur. See United States v. Marcus, 487 F. Supp. 2d 289, 302 (E.D.N.Y. 2007)(Congress enacted the TVPA's expanded definition of involuntary servitude "as a response to the Supreme Court's decision in Kozminski"). Language allowing psychological coercion was thus adopted. See 22 U.S.C. § 7102(5) ("any scheme, plan, or pattern *intended to cause a person to believe* that. . ."); see also 22 U.S.C. § 7101(13)-(14) (congressional findings regarding the passage of the TVPA); United States v. Bradley, 390 F.3d 145, 150 (1st Cir. 2004), *judgment vacated on other grounds*, 545 U.S. 1101 (2005) (the TVPA was indeed intended to encompass "subtle

3

psychological methods of coercion."). The TVPA also created a new crime of forced labor, which relied upon the same language as the TVPA's definition of involuntary servitude, compare 22 U.S.C. § 7102(5); 18 U.S.C. § 1589,[5] as well as the crime of human trafficking, which incorporated the crime of involuntary servitude. See 18 U.S.C. § 1590. The Plaintiffs are victims of involuntary servitude, forced labor, and trafficking for involuntary servitude and forced labor (collectively "involuntary servitude").

At the core of the moving Plaintiffs' involuntary servitude claims are the Defendants' pervasive threats issued when the moving Plaintiffs stopped working for want of wage payment. It is based on these threats, which the Defendants proved were not empty, that the moving Plaintiffs felt they had no choice but to continue to toil for the Defendants while getting little or no pay.

Wages came only sporadically if they came at all during the moving Plaintiffs' employment by the Defendants. Moving Plaintiff Emilio Salguero was not paid at all until he had worked for the Defendants for four weeks and was often unpaid during spans of five to six weeks. (Salguero-Sarmiento Decl. at ¶ 6-7.) When the moving Plaintiffs were paid, it was often only enough to subsist and to service their ever-increasing debts (Garcia-Rodriguez Decl. at ¶ 9; Maldonado-Arita Decl. at ¶ 8), and the wages were parceled out only at a level sufficient to coerce the Plaintiffs' continued employment. (Salguero-Sarmiento Decl. at ¶ 6.)

On multiple occasions, the moving Plaintiffs tried to stop working after they had not been paid for extended periods of time. (Salguero-Sarmiento Decl. at ¶ 9; Garcia-

---

[5] The 2003 TVPA reauthorization created a private right of action for violations of these forced labor provisions as well as for trafficking with respect to involuntary servitude and other violations of Title 18, Chapter 77 of the U.S. Code. See 18 U.S.C. § 1595; 18 U.S.C. § 1590.

4

Rodriguez Decl. at ¶ 11; Maldonado-Arita Decl. at ¶ 10.) When this occurred, the Defendants would threaten the moving Plaintiffs with eviction, arrest, and deportation, effectively forcing the moving Plaintiffs to return to work. (Salguero-Sarmiento Decl. at ¶¶ 9-10; Garcia-Rodriguez Decl. at ¶¶ 11-12; Maldonado-Arita Decl. at ¶¶ 10-12). The Defendants followed through on their threats. On one occasion, Defendants locked six of the Plaintiffs out of their housing, causing them to be temporarily homeless, after they had complained about not getting paid. (Maldonado-Arita Decl. at ¶ 13; Garcia-Rodriguez Decl. at ¶13; Salguero-Sarmiento Decl. at ¶10) This, of course, had a significant chilling effect on all of the Defendants' employees. (Maldonado-Arita Decl. at ¶ 14; Garcia-Rodriguez Decl. at ¶13). The message to these Plaintiffs, and to the remaining workers, was that they would be made homeless if they did not continue to work, in spite of the non-payment or insufficient payment of wages.

The threat of being made homeless is exactly the kind of serious harm contemplated by the TVPA's definition of involuntary servitude, particularly in post-Katrina New Orleans, where there are significant public safety concerns and very limited availability of low-rent housing. See, e.g. Bradley, 390 F.3d at 153 (a victim's "special vulnerabilities" should be considered when whether there was a threat of serious harm). Further, threatening a worker with arrest and deportation "clearly falls within the concept and definition of 'abuse of legal process' since the alleged objective for same was to intimidate and coerce the workers into forced labor." United States v. Garcia, Case No. 02-CR-110S-01, 2003 U.S. Dist. LEXIS 22088, *23 (W.D.N.Y. 2003). Combined, the threats of homelessness and deportation convinced the moving Plaintiffs that they had no choice. (Salguero-Sarmiento Decl. at ¶10; Maldonado-Arita Decl. at ¶¶ 10-14; Garcia-

Rodriguez Decl. at ¶¶ 12-13.) For these reasons, the moving Plaintiffs are victims of involuntary servitude.

### 2. The Moving Plaintiffs Suffered Substantial Physical and Mental Abuse as a Result of Defendants' Crimes.

To be eligible for U visa relief, an alien must have "suffered substantial physical or mental abuse as a result of having been a victim of criminal activity" enumerated by the Act. See 8 U.S.C. § 1101(a)(15)(U)(iii)(1). To determine whether suffered abuse is substantial, a number of factors may be considered, including:

> The nature of the injury inflicted or suffered; the severity of the perpetrator's conduct; the severity of the harm suffered; the duration of the infliction of the harm; and the extent to which there is permanent or serious harm to the appearance, health, or physical or mental soundness of the victim. . . . A series of acts taken together may be considered substantial physical or mental abuse even where no single act alone rises to that level.

8 C.F.R. § 214.14(b). Ultimately, eligibility for U visa interim relief must be made on "case-by-case determinations, using [these] factors as guidelines. . . . Through these factors, USCIS will be able to evaluate the kind and degree of harm suffered by the individual applicant, based upon the individual applicant's experience." 72 FR 53018.

The moving Plaintiffs suffered substantial physical and mental abuse as a result of the working and living conditions they were forced to endure. In their supporting declarations, the moving Plaintiffs describe how the Defendants housed them in hurricane-damaged and uninhabitable apartments. (Garcia-Rodriguez Decl. at ¶7; Maldonado-Arita Decl. at ¶7; Salguero-Sarmiento Decl at ¶6). While the moving Plaintiffs were forced to work, the Defendants regularly refused to pay them for periods of five to six weeks. (Salguero-Sarmiento Decl. at ¶7.) Denied their wages, the moving Plaintiffs suffered hunger. (Salguero-Sarmiento Decl. at ¶7; Garcia-Rodriguez Decl. at

6

¶8.) Plaintiff Maldonado sometimes "had to find food among the trash that the American residents left behind when they left their apartments at the end of the month. It was embarrassing and I suffered humiliation because of that." (Maldonado-Artia Decl. at ¶9.) As a result of the long lapses between paydays, the moving Plaintiffs had to borrow money through informal channels, incurring ever-increasing debts. (Garcia-Rodriguez Decl. at ¶9; Maldonado-Artia Decl. at ¶9.)

When the Plaintiffs attempted to stop working because they were not paid, their employers threatened them with eviction and deportation. (Salguero-Sarmiento Decl. at ¶¶ 9-11; Garcia-Rodriguez Decl. at ¶11; Maldonado-Artia Decl. at ¶¶ 10-11.) The moving Plaintiffs returned to work without pay because they feared these threats. (Salguero-Sarmiento Decl. at ¶10; Garcia-Rodriguez Decl. at ¶12; Maldonado-Artia Decl. at ¶¶ 12.) When a group of workers were forcibly evicted from their apartments with five minutes notice after they refused to work for no wages, the moving Plaintiffs' degree of fear increased. (Garcia-Rodriguez Decl. at ¶¶12-13; Maldonado-Arita Decl. at ¶¶ 13-14; Salguero-Sarmiento Decl. at ¶10.) The moving Plaintiffs suffer emotional trauma resulting from their subjugation to forced labor. (Garcia-Rodriguez Decl. at ¶17; Salguero-Sarmiento Decl. at ¶¶ 11, 13; Maldonado-Arita Decl. at ¶¶ 18-19.) Moving Plaintiff Misael Garcia recounts that:

> They regularly threatened us like this. They said that the police could deport us immediately and that scared us. When we confronted the bosses like that I would get very nervous. I would get a headache and because of a lack of food I would get stomach aches. I felt horrible from nerves.

(Garcia-Rodriguez Decl. at ¶11.) Moving Plaintiff Maldonado-Aritia explains that:

> It was very frustrating to work for nothing like a slave while my family had so much necessity. As much as I suffered for hunger and humiliation, it killed me to

7

know that my family was suffering more in Honduras. I feel that I failed for not being able to help them financially and it makes me feel depressed.

(Maldonado-Arita Decl. at ¶19.) The culmination of the Defendants' actions – the arrest and placement of deportation proceedings of the moving Plaintiffs and others was devastating, carrying grave mental health consequences for the moving Plaintiffs. (Maldonado-Arita Decl. at ¶¶ 18-19.) Because of the pervasive nature of the Defendants' abuses and the significant trauma suffered by the moving Plaintiffs, they can show that they have suffered substantial physical and mental abuse, thereby making them eligible for U visa relief.

### 3. The Moving Plaintiffs Possess Information about Defendants' Involvement in the Crime of Involuntary Servitude

To receive U visa relief, an alien must "possess[] information" concerning the alleged criminal activity. See 8 U.S.C. § 1101(a)(15)(U)(i)(II); see also 8 C.F.R. § 214.14(b)(2) (the petitioner must have "knowledge of the details" and "possess specific facts" sufficient to show that the petitioner "has, is, or is likely" to assist the prosecution of the crimes.) As set forth in the moving Plaintiffs' supporting declarations, the moving Plaintiffs have intimate and detailed knowledge of the Defendants' crimes.

### 4. The Moving Plaintiffs Have Been Helpful, are Being Helpful, or are Likely to be Helpful" in the Investigation or Prosecution of Defendants' Crimes.

The final requirement for U visa relief is that the petitioner "has been helpful, is being helpful, or is likely to be helpful" to the law enforcement agency or judge investigating or prosecuting the crime. See 8 U.S.C. § 1101(a)(15)(U)(i).

Here, the moving Plaintiffs have filed the instant lawsuit alleging that Defendants committed the crime of involuntary servitude, see 18 U.S.C. § 1590 (incorporating 18 U.S.C. § 1584) and the substantively identical crime of forced labor, see 18 U.S.C. § 1589, for which a private right of action was extended by 18 U.S.C. § 1595. The Plaintiffs' civil action under the TVPA requires that these claims satisfy the elements of, and be litigated under the applicable criminal statutes. 18 U.S.C. § 1595(a). As such, the moving Plaintiffs proceed in this civil action under the criminal statutes qualifying for U visa relief. 8 U.S.C. § 1101(a)(15)(U)(iii). The moving Plaintiffs' bringing the instant lawsuit itself -- a private prosecution of these crimes -- is manifestly being "helpful" to the Court's investigation of Defendants' criminal activity.

Similarly, the moving Plaintiffs have brought their charges before the U.S. Department of Justice Civil Rights Division ("DOJ/CRD"), which has principle responsibility for prosecuting human trafficking-related offenses. The moving Plaintiffs are making themselves available to the DOJ/CRD's investigation. If criminal prosecution of the Defendants ensues, it will most likely occur before this Court.

### B. This Court May Certify That The Moving Plaintiffs Are Assisting The Investigation Of The Defendants' Crimes.

As set forth above, an alien applying for U nonimmigrant status must provide a certification from a law enforcement official or judge that the alien is "has been helpful, is being helpful, or is likely to be helpful" in the investigation or prosecution of the underlying crime. See 8 U.S.C. § 1184(p)(1). Recognizing that judges technically "neither investigate crimes nor prosecute perpetrators," U.S. Citizenship and Immigration Services ("USCIS") suggests that "the term 'investigation or prosecution' should be interpreted broadly." 72 FR 53020.

9

In the instant case, this Court is the appropriate certifying authority. Because the instant lawsuit is venued before this Court, this Court bears the responsibility to investigate and prosecute – under the broad definition set forth in the USCIS guidelines -- the alleged underlying involuntary servitude crime.

U.S. Customs and Immigration Service regulations direct the certifying official to complete and sign Form I-918, Supplement B, "U Nonimmigrant Status Certification." See 8 C.F.R. 214.14(c)(2)(i). U.S.C.I.S. instructions regarding this form have been submitted in this matter as Plaintiffs' Exhibit 4 (Doc. 10-7). Proposed completed Form I-918 Supplement B certification forms corresponding to each of the three moving Plaintiffs have been attached hereto as Plaintiffs' Exhibits 11-13.

### C. This Motion Should Be Considered On An Expedited Basis

Each of the three moving Plaintiffs is currently incarcerated in ICE custody, being processed for removal. Moving Plaintiff Emilio Salguero is in ICE custody and may be removed without further judicial process. ICE has not yet ruled on Mr. Salguero's pending request to stay his removal pending this Court's adjudication of his petition for U visa certification. Mr. Salguero could be removed at any time. Moving Plaintiff Victor Manuel Maldonado faces a hearing in the removal case against him at 9:30AM on April 15, 2008. At that time, Mr. Maldonado will seek a continuance of his immigration proceeding to permit this Court's resolution of this motion. His ability to secure such a continuance is uncertain. Moving Plaintiff Misael Garcia is likewise incarcerated in ICE custody and is the subject of ongoing removal proceedings before the Immigration Court in Oakdale, Louisiana. Therefore, the moving Plaintiffs respectfully request that the Court consider this motion on an expedited basis to prevent the moving Plaintiffs from

being removed from the United States before the issues in front of this Court are adjudicated.

## V. Conclusion

For the reasons set forth herein, the Plaintiffs' Second Emergency Motion for U Visa Certification should be granted.

Respectfully Submitted,

__/s/ Vanessa Spinazola__
Vanessa Spinazola (TA)
LSBN 31328
The Pro Bono Project
615 Baronne Street, Suite 201
New Orleans, LA 70113
Tel: (504) 581-4043


Mary C. Bauer (TA)
Virginia State Bar # 31388
*Pro Hac Vice*
Andrew H. Turner (TA)
Virginia State Bar # 48853
*Pro Hac Vice*
Immigrant Justice Project
Southern Poverty Law Center
400 Washington Ave.
Montgomery, AL 36140
Tel: (334) 956-8326
Fax: (334) 956-8481

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this date electronically filed the foregoing ***Memorandum of Law in Support of Plaintiffs' Second Emergency Motion For U Visa Certification*** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification to the following attorneys of record for Defendants.

>James M. Garner
>Elwood F. Cahill, Jr.
>Debrah J. Fishman
>Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC
>909 Poydras Street, 28th Floor
>New Orleans, LA 70112-1033
>Phone: 504-299-2100
>Fax: 504-299-2300

This 9th Day of April, 2008.

**/S/ Vanessa Spinazola**