UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FREDI GARCIA, *et al.*

on behalf of themselves and all
others similarly situated,

    Plaintiffs,

v.

AUDUBON COMMUNITIES MANAGEMENT,
LLC, *et al.*

    Defendants.

Civ.No.08-1291-HGB-KWR
(SECT. C, MAG. 4)

**Collective Action**

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION

COME NOW the named Representative Plaintiffs, who respectfully submit this memorandum in support of their motion to conditionally certify this action as a collective action pursuant to § 216(b) of the Fair Labor Standards Act ("FLSA") on behalf of themselves and all others similarly situated. 29 U.S.C. § 216(b). To date, thirty-eight (38) workers have filed FLSA Consent to Sue forms with the Court, seeking to opt-in to the representative Plaintiffs' Count III and Count IV collective action claims. (Docs. 1-3, 16, 42-2, 50-2) The named Representative Plaintiffs seek discovery of potential class members necessary for notice, and authorization to issue notice to the class. The named representative Plaintiffs seek to represent an opt-in class consisting of:

> All non-supervisory interior renovation workers employed by
> Defendants on work crews overseen by Abelardo Rodriguez, H&H
> Associates and/or by Alcantara Carpentry who performed work at
> the Audubon Pointe, Audubon Village, Audubon Park and/or

>Audubon Grove work sites between March 17, 2005 and March 17, 2008.

(Doc. 64 ¶ 208)

The FLSA claims at issue assert that the fifteen Defendants named in Plaintiffs' First Amended Complaint employed Representative and opt-in Plaintiffs as interior renovation workers on four apartment complex sites in Louisiana and Mississippi and made tardy and incomplete wage payments to all workers included in this class. In Count III of their First Amended Complaint, Plaintiffs allege that these practices operated to compensate them and others similarly situated at a rate less than the FLSA's mandated minimum wage rate. (Doc. 64 ¶¶ 221-228) In Count IV of their First Amended Complaint, Plaintiffs allege that these companywide practices operated to compensate them and others similarly situated at a rate less than the FLSA's mandated overtime wage rate for hours above forty in a workweek. (Doc. 64 ¶¶ 229-236) Plaintiffs allege that Defendants paid all workers included in the proposed class a flat salary which did not satisfy the overtime requirements of the FLSA. (Doc. 64 ¶185) Plaintiffs allege that Defendants failed to include the fair value of employer-provided housing calculating the workers' regular rate of pay for the purposes of calculating overtime payments. (Doc. 64 ¶¶ 233, 247) Plaintiffs allege that the foregoing practices causing and constituting violations of the FLSA were universal company practices applied to all members of the proposed collective action class. (Doc. 64 ¶ 210)

Because Plaintiffs surpass the lenient standard for conditional certification at this stage of a FLSA collective action, Plaintiffs move this Court to preliminarily certify Counts III and IV of the Plaintiffs' First Amended Complaint as a collective action, and to order the Defendants to provide Plaintiffs with the names, last-known addresses and telephone numbers (if any) of the potential opt-in plaintiffs, such that they might be provided with notice of their eligibility to

participate in this action. The interior renovation workers in the defined class worked under substantially identical conditions, were part of a uniform system of compensation and suffered the same illegal underpayment of wages as a result of Defendants' systematic violations of the FLSA as did the named Plaintiffs.

Certification and notice advance the remedial goals of the FLSA and promote efficient resolution of claims. Because the statutes of limitations on individual workers' claims are not automatically tolled until that worker files his or her Consent to Sue form with the Court, each week that passes causes workers who have not learned of this suit and filed their Consent to Sue form to lose the ability to claim their unpaid wages for that week. 29 U.S.C. §216(b); 29 U.S.C. §257. Prompt certification and notice is particularly essential in this case because of substantial logistical barriers to notice: potential opt-in plaintiffs speak very little or no English, have relatively low levels of education, and may live in various locations throughout the United States and Honduras.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiffs filed this action on March 17, 2008 alleging that Defendants violated their rights under the Victims of Trafficking Protection Act 18 U.S.C. § 1595 (2008) and under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (2008) ("FLSA") during the Plaintiffs' employment as interior renovation workers at the Defendants' apartment complexes in Algiers, Bridge City and Baton Rouge in Louisiana, and in Jackson, Mississippi. In Count III of their Complaint, Plaintiffs bring claims pursuant to 29 U.S.C. §§ 216(b), 206(a) and 255(a) on behalf of themselves and all others similarly situated for Defendants' willful violations of the minimum wage provisions of the FLSA. (Doc. 64 ¶¶ 221-228) In Count IV of their Complaint, Plaintiffs further allege claims on behalf of themselves and all others similarly situated under 29 U.S.C. §

207 for Defendants' willful violations of the overtime provisions of the FLSA. (Doc. 64 ¶¶ 229-236)

Defendants own and manage four apartment complexes in Louisiana and Mississippi: Audubon Pointe, Audubon Village, Audubon Park and Audubon Grove. (Doc. 64 ¶¶ 34, 53, 55, 83, 104, 126, 167) Representative and opt-in Plaintiffs are interior renovation workers who performed a variety of similar, manual labor tasks to improve the interiors of the apartments at Defendants' four apartment complexes named above. *See* Ex. 19-31 at ¶¶ 3, 7. While the Plaintiffs' individual length of service varied, their work schedules, job duties and salaries were the same. *See* Ex. 19-31 at ¶¶ 3, 5, 6. Any minor differences in salary related only to a worker's length of service with Defendants and are immaterial to the Court's analysis of whether this case should be certified as a collective action at this time. *See* Declaration of Misael Garcia Rodriguez, Ex. 20 at ¶ 5; Declaration of Jose Salvador Balladares, Ex. 21 at ¶ 5; Declaration of Victor Manuel Maldonado Arita, Ex. 22 at ¶ 5; Declaration of Denis Amador Diaz, Ex. 23 at ¶ 5; Declaration of Emilio Salguero Sarmiento, Ex. 24 at ¶ 5; Declaration of Jose Efrain Hernandez Garcia, Ex. 26 at ¶ 5; Declaration of Edgar Yovani Garcia Martinez, Ex. 27 at ¶ 5; Declaration of Santos Lara Barrera, Ex. 28 at ¶ 5; Declaration of Salvador Lopez Guillen, Ex. 30 at ¶ 5; Declaration of Jose Leopoldo Mejia Serrano, Ex. 31 at ¶ 5. While the individual damages of each worker may vary, a collective action is still properly certified based on the imposition of a "single decision, policy, or plan." Brown v. Money Tree Mortgage, Inc., 222 F.R.D. 676, 681-82 (D. Kan. 2004) (certifying a FLSA collective action and noting that "[I]t is well established that individual questions with respect to damages will not defeat class certification…unless that issue goes to the heart of the lawsuit." (citing Reab v. Elec. Arts, Inc., 214 F. R.D. 623, 629 (D. Colo. 2002).)

Representative and opt-in Plaintiffs engaged in the same type of work, under the same conditions, regardless of which Audubon supervisor was overseeing their work crew. *See* Ex. 19-31 at ¶ 4. Every interior renovation worker was required to sign-in upon commencement of work in the morning at the Audubon front office. *See* Ex. 19-31 at ¶ 8. When payments were made, the Representative and opt-in Plaintiffs were universally paid in cash. *See* Ex. 19-31 at ¶ 11. None of the Plaintiffs were required to fill out job applications for their jobs as manual laborers doing interior renovation work. *See* Ex. 19-31 at ¶ 13.

Defendants failed to pay each of the Plaintiffs and others similarly situated the applicable minimum wage for every compensable hour of labor they performed. (Doc. 64 ¶ 224) On numerous and regular occasions, the Plaintiffs and opt-in Plaintiffs received no payment or incomplete payment for their work performed at Defendants' apartment complexes. *See* Ex. 19-31 at ¶ 10. The same system of improper compensation for minimum wages affected all interior workers in the proposed class. *Id.* The Representative Plaintiffs derive their personal knowledge that similarly situated individuals suffered from the same improper compensation practices in part from their participation in and witnessing of complaints to supervisors and collective work stoppages at the apartment complexes, which workers held to demand payment of their minimum and overtime wages. *See* Declaration of Fredi Umberto Mejivar Garcia, Ex. 19 at ¶ 10; Declaration of Misael Garcia Rodriguez, Ex. 20 at ¶ 10; Declaration of Jose Salvador Balladares, Ex. 21 at ¶ 10; Declaration of Victor Manuel Maldonado Arita, Ex. 22 at ¶ 10; Declaration of Denis Amador Diaz, Ex. 23 at ¶ 10; Declaration of Reyes Aguilar Garcia, Ex. 25 at ¶ 10; Declaration of Jose Efrain Hernandez Garcia, Ex. 26 at ¶ 10; Declaration of Edgar Yovani Garcia Martinez, Ex. 27 at ¶ 10; Declaration of Santos Lara Barrera, Ex. 28 at ¶ 10; Declaration of Esvin Garcia Rodenzo, Ex. 29 at ¶ 10; Declaration of Salvador Lopez Guillen, Ex. 30 at ¶ 10.

Representative Plaintiffs and opt-ins also witnessed incomplete cash payments to similarly situated workers on the occasions they were paid. *See* Ex. 19-31 at ¶ 10.

Defendants further violated the FLSA by failing to pay the Representative and opt-in Plaintiffs the overtime wage rate for all hours worked in excess of forty hours per work week. (Doc. 64 ¶ 232) Representative and opt-in Plaintiffs routinely worked over forty hours in a week. *See* Ex. 19-31 at ¶ 9. They shared this schedule with other workers doing the same type of work. *See* Ex. 19-31 at ¶¶ 6, 7. However, they received the same flat salary rate regardless of the number of hours worked. *See* Ex. 19-31 at ¶¶ 5, 6, 9. Representative and opt-in Plaintiffs have personal knowledge that the same uniform system of under-compensation of overtime wages affected similarly situated individuals because they discussed the lack of overtime with each other during the work stoppages. *See* Ex. 19-31 at ¶ 10.

Defendants violated the FLSA by failing to include the reasonable cost of housing in their calculation of the regular rate of pay, for purposes of the payment of overtime. (Doc. 64 ¶ 233) Representative and opt-in Plaintiffs lived in employer provided housing at all four apartment complexes comprising the class and believed that living on the work site without paying rent was part of their compensation. *See* Ex. 19-31 at ¶ 12.

## II. LEGAL STANDARDS GOVERNING FLSA ACTIONS

### A. Procedure for Certification

Section 16(b) of the FLSA provides that a person may maintain an action on "behalf of himself . . . and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which the action is brought." 29 U.S.C. § 216(b); <u>Hoffman La-Roche, Inc. v.</u>

Sperling, 493 U.S. 165, 168 (1989).[1] The text of the statute indicates only two requirements to proceed as a collective action: (1) all Plaintiffs must be "similarly situated;" and (2) a plaintiff must consent in writing to take part in the suit. Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1212 (5th Cir. 1995). The usual requirements for the certification of Rule 23 class action do not apply to FLSA collective actions. *Id.* at 1213. When employees are shown to be similarly situated, the district court has the discretion to implement the collective action procedure by authorizing notice to potential plaintiffs. *See,* Hoffman-LaRoche Inc., 493 U.S. at 171. Such notice should be "timely, accurate, and informative." *Id.*

United States District Courts in the Fifth Circuit have applied the two-tiered approach to certifying FLSA representative actions described in Mooney:

> The first determination is made at the so-called "notice stage" [when] the district court makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members. Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class....The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial.

Mooney, 54 F.3d at 1213-1214. *See also* Villatoro v. Kim Son Restaurant, 286 F. Supp. 2d 807, 809-10 (S.D. Tex. 3003) (consensus among courts favors utilizing two step approach described in Mooney). *See e.g.* Kenyatta-Bean v. Hous. Auth. of New Orleans, No. 04-2592, 2005 U.S. Dist. LEXIS 36667, at *22 (E.D. La. Nov. 18, 2005) (certifying an FLSA collective action where representative plaintiffs made substantial allegations that "they and absent class members were

---

[1] Although Hoffman-LaRoche is an Age Discrimination in Employment Act (ADEA) case, its analysis is applicable to FLSA cases because the ADEA explicitly incorporates the FLSA collective action provisions. Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1212 (5th Cir. 1995); Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 n. 15 (S.D.N.Y. 1998)("[I]n Hoffman-LaRoche, the Supreme Court construed § 216(b) on its own terms, and its analysis applies with equal force to FLSA cases.")

together victims of a single decision, policy, or plan" and the court found no evidence of "circumstances purely personal to the plaintiff rather than from a generally applicable rule, policy, or practice."); Donohue v. Francis Servs., No. 04-170, 2004 U.S. Dist. LEXIS 9355, at *6 (E.D. La. May 24, 2004) (certifying an FLSA collective action pre-discovery because Plaintiffs' affidavits showed that they were not "singled out" for underpayment but were victims of the same company policy).

The first step *conditionally* certifies the case as a collective action for purposes of issuing notice and conducting discovery. This initial certification must be made early in the litigation because, unlike a Rule 23 class action, the statute of limitations continues to run against the class members until a class member affirmatively files his consent to sue. 29 U.S.C. § 216(b); 29 U.S.C. § 257. *See* Hoffman v. Sbarro Inc., 982 F. Supp. 249, 260 (S.D.N.Y. 1997).

To secure preliminary certification of their collective action under the lenient preliminary standard described in Mooney, Plaintiffs need only make substantial allegations that they and the putative class members are similarly situated. Mooney, 54 F.3d at 1214 n. 8. Plaintiffs may accomplish the requisite showing through pleadings and supplementary materials such as affidavits and other supporting documents. *Id. See also* Williams v. Bally's Louisiana, Inc., No. 05-5020, 2006 U.S. Dist. LEXIS 29764, at *6 (E.D. La. May 5, 2006) ("The court applies a lenient standard because this decision is generally based upon only the pleadings and any affidavits that have been submitted.") District courts have found various combinations of complaint allegations, affidavits, and opt-in consent forms of potential opt-in plaintiffs to be sufficient evidence to conditionally certify a representative action. *See* Lima v. Int'l Catastrophe Solutions, Inc., 493 F. Supp. 2d 793 (E.D. La. 2007) (certifying broad class based on identical affidavits of plaintiffs and opt-in plaintiffs); Melson v. Directech Sw., Inc., No. 07-1087, 2008

U.S. Dist. LEXIS 48525, at *12 (E.D. La. June 25, 2008) (granting certification based on affidavits of plaintiffs and opt-ins who attested that they "and others" were owed overtime); Camp v. Progressive Corp., No. 01-2680, 2002 U.S. Dist. LEXIS 21903, at *13 (E.D. La. Nov. 8, 2002) (granting class certification based on "bare minimum of evidence," without affidavits but relying on allegations in the amended complaint and defendant's discovery evidence).

In light of the FLSA's remedial purpose, courts have repeatedly held that the similarly situated requirement of § 216(b) must be interpreted generously to permit workers to collectively pursue their FLSA claims. *See, e.g.*, Hipp v. Liberty Nat'l Ins. Co., 252 F. 3d 1208, 1214 (11th Cir. 2001) ("We conclude the similarly situated requirement is not particularly stringent[.]"); Jackson v. New York Tel. Co., 163 F.R.D. 429, 431 (S.D. N.Y. 1995) (imposition of a rigorous inquiry would undermine "the importance of early judicial management to assure the efficient resolution of similar claims."); Wyatt v. Pride Offshore, Inc., No. 96-1998, 1996 U.S. Dist. LEXIS 13335 *5 (E.D. La. Sept. 6, 1996) (characterizing a motion to certify a class action as a motion to certify a collective action and noting that "courts routinely 'certify' § 216(b) actions.)

The second stage is typically precipitated by a motion for "decertification" by the defendant after discovery is complete. Mooney, 54 F.3d at 1212. If the defendant establishes that the claimants who responded to the opt-in notice are not, in fact, similarly situated, the district court decertifies the action and dismisses without prejudice the claims of the opt-in plaintiffs. If the court finds the opt-in plaintiffs to be similarly situated, the case proceeds to trial as a collective action. Mendez v. Radec Corp., 232 F.R.D. 78, 92 (S.D.N.Y. 2005) (denying second-stage decertification motion alleging differences in individual damages and defenses to those damages because "defendants [had] maintained and applied certain uniform, across-the-board policies that violate[d] the FLSA.").

### B. The Similarly Situated Standard

Although the FLSA does not define the term "similarly situated" courts have generally agreed that plaintiffs must allege that the putative class members were injured as a result of a policy or practice of the employer that affected all class members in a similar fashion. *See, e.g.* Whitworth v. Chiles Offshore Corp., No. 92-1504, 1992 U.S. Dist. LEXIS 13405, at *1 (E.D. La. Sept. 2, 1992) (issue is whether members of the putative class were victims of "any generally applicable rule, policy, or practice"). *See also* Kenyatta-Bean, 2005 U.S. Dist. LEXIS 36667 at *18-19. In alleging this similarity, the "plaintiff's burden is not heavy, the evidence necessary is minimal and the mere existence of some variation between potential claimants is not determinative of lack of similarity." Ebbs v. Orleans Parish Sch. Bd., No. 04-1198, 2007 U.S. Dist. LEXIS 53467, at *6 (E.D. La. July 24, 2007.)

"Similarly situated" does not mean identically situated. *See* Hipp, 252 F.3d at 1217; England v. New Century Fin. Corp., 370 F. Supp. 2d 504, 507 (M.D. La. 2005); Basco v. Wal-Mart Stores, Inc., No. 00-3184, 2004 U.S. Dist. LEXIS 12441 (E.D. La. July 1, 2004); Crain v. Helmerich and Payne Int'l, No. 92-0043, 1992 WL 91946, at *2 (E.D. La. April 16, 1992). In fact, "a unified policy, plan or scheme...may not be required to satisfy the more liberal 'similarly situated' standard of §216(b)." Hipp, 252 F.3d at 1219 (citing Grayson v. K Mart Corp., 79 F.3d 1086 (11th Cir. 1996). Typically, "a court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff and not from any generally applicable rule, policy, or practice." Whitworth, 1992 U.S. Dist. LEXIS at *2. *See also* Donohue, 2004 U.S. Dist. LEXIS 9355 (deciding plaintiffs were similarly situated based on affidavits supporting allegations in the complaint that they were not paid overtime and did not allege that they were "singled out" for underpayment).

## III. ARGUMENT

### A. Conditional Certification is Appropriate in this Case because Plaintiffs, Opt-ins and the Class are Similarly Situated

Plaintiffs meet the similarly situated standard set forth above and can show that the opt-ins are similarly situated with respect to their "job requirements and with regard to their pay provisions." Lima, 493 F. Supp. 2d at 798 (citing Dybach v. Florida Dep't. of Corr., 942 F.2d 1562, 1567-68 (11th Cir. 1991).) Allegations in the Complaint, Plaintiffs' and opt-in plaintiffs' Consent to Sue forms and the thirteen (13) affidavits filed with this Motion as Exhibits 19 through 31 provide sufficient evidence of similarity to surpass the lenient standard for conditional certification at this stage of the litigation. These documents show that Plaintiffs, at least one opt-in class member, and all putative members of the collective action had nearly identical job responsibilities, salaries, work schedules, sign-in requirements, supervisors and living conditions; suffered from the same improper payment practices; and were hired in the same manner by the Defendants. *See* Ex. 19-31, at ¶¶ 3-13.

Plaintiffs' First Amended Complaint alleges that all interior renovation workers employed at Audubon Pointe, Audubon Village, Audubon Park and/or Audubon Grove under the supervision of Abelardo Rodriguez, H&H Associates and/or by Alcantara Carpentry suffered tardy and incomplete wage payments by the Defendants. (Doc. 64 ¶ 210, 223) Plaintiffs also allege that they and those similarly situated are victims of companywide policies which operated to compensate them at a rate less than the federally mandated overtime wage rate, and that the reasonable cost of their employer-provided housing was not included in the calculation of the regular rate of pay for purposes of overtime. (Doc. 64 ¶ 210, 230-233)

Representative Plaintiffs and at least one opt-in Plaintiff describe their jobs as involving a limited set of tasks related to interior renovation work: painting and installing sheetrock, molding,

cabinets, bathroom fixtures and kitchen appliances. *See* Ex. 19-31 at ¶ 3. The named Representative Plaintiffs labored alongside members of the putative class without differentiation in their job duties. *See* Ex. 19-31 at ¶ 7. Even where representative Plaintiffs or members of the putative class performed various aspects of the manual labor involved in interior renovation, the putative collective action exceeds the mandatory threshold for similarity, creating enough of a "factual nexus" to justify preliminary certification of a collective action under § 216(b). Donohue, 2004 U.S. Dist. LEXIS 9355, at *6. *See also* Bradford v. Bed Bath & Beyond, Inc., 184 F. Supp. 2d 1342, 1346-47 (N.D. Ga. 2002) (considering the "employment setting" and finding that "[p]laintiffs' job duties, while not identical, were very similar.")

Plaintiffs allege that the Defendants did not pay them for weeks at a time and state that the workers got together and discussed this non-payment scheme, even engaging in work stoppages to voice their concerns. *See* Ex. 19-31 at ¶ 10. Plaintiffs further state that they consistently worked over forty hours in a week and were not paid any overtime. *See* Ex. 19-31 at ¶ 9. Both the Representative and opt-in Plaintiffs in this case have personal knowledge that these FLSA violations happened to other interior workers employed by the Defendants because they observed and worked alongside Defendants' other interior workers, lived in on-site employer-provided housing with Defendants' other interior workers and often spoke about the non-payment and overtime problems to each other, particularly when they complained and engaged in work stoppages. *See* Ex. 19-31 at ¶¶ 7, 9, 10, 12. *See also* Villatoro, 286 F. Supp. 2d at 810-11 ("The record indicates that Villatoro was a typical member of Kim Son's bus and dishwasher staff. She observed other workers in these jobs and the cooks worked hours similar to hers. This evidence is probative that she is similarly situated to others in those categories."); Roebuck v. Hudson Valley Farm, 239 F. Supp. 2d 234, 238-39 (N.D.N.Y. 2002) (plaintiffs' affidavits

stating that they observed other workers doing similar work and also were not paid overtime were "sufficient to constitute a preliminary showing that plaintiffs and potential plaintiffs together were victims of a common policy or plan that violated the law.")

Finally, twenty-five (25) other workers desire to opt in and have indicated their intent in writing. (Docs. 1-3, 16, 42-2, 50-2) These Consent to Sue forms, along with the Declaration of opt-in Plaintiff Jose Leopoldo Mejia Serrano, attached hereto as Exhibit 31, demonstrate that others among the Defendants' interior workers at the Defendants' four apartment complexes wish to join Plaintiffs' FLSA suit.

Plaintiffs' allegations of common practices that resulted in FLSA violations suffice to meet their preliminary burden of demonstrating that they are "similarly situated" for the purposes of 29 U.S.C. § 216(b). *See* Salinas-Rodriguez v. Alpha Servs., L.L.C., No. 3:05-CV-440WHB-AGN, 2005 U.S. Dist. LEXIS 39673 at * 11-12 (S.D. Miss. Dec. 27, 2005) (certifying FLSA collective action on behalf of H-2B workers pre-discovery based on Forms ETA 750 and plaintiffs' affidavits and noting that, "[i]f the Court required more proof at this notice stage, it would be overlooking the purpose behind the two-stage inquiry."); Neagley v. Atascosa County EMS, No. SA-04-CA-0893-XR, 2005 U.S. Dist. LEXIS 230, *2 (W.D. Tex. Jan. 7, 2005) (granting collective action certification where the plaintiff made allegations in his complaint "as to all nonexempt, hourly paid EMTs who were allegedly required to perform their regular services without compensation and who were not paid compensation for on-call time when they were required to receive payment"); Aguilar v. Complete Landsculpture, Inc., No. 3:04-CV-0776-D, 2004 U.S. Dist. LEXIS 20265, at *14 (N.D. Tex. Oct. 7, 2004) (where workers "were compensated under the same regimen," they were similarly situated despite variations in their hours and rates of pay); Blake v. Colonial Savings, No. H-04-0944, 2004 U.S. Dist. LEXIS

29122, at *2 (S.D. Tex. Aug. 12, 2004) (granting preliminary certification of collective action for all employees who worked as loan officers and were alleged to have been subject to the same "work overtime but do not report it" policy); Whitworth, 1992 U.S. Dist. LEXIS 13405 at *2 (certifying collective action where "the allegation is that the employer failed to pay all for these individuals as a matter of company policy, not on the basis of separate decisions.").

Plaintiffs have ample bases for personal knowledge and have adequately attested to the similarity of work performed by and wage violations suffered by workers in the proposed collective action. Plaintiffs' allegations in their complaint, affidavits provided by Representative Plaintiffs and an Opt-in Plaintiff and the twenty-five (25) FLSA Consent to Sue forms filed at this early state furnish more than sufficient evidence that Plaintiffs and the proposed members of the collective action are similarly situated.

## IV. NOTICE TO THE CLASS

Under the FLSA's collective action provisions, trial courts have the authority to facilitate notice to potential plaintiffs to inform them of an action and allow them an opportunity to opt-in. Hoffman-LaRoche, Inc., 493 U.S. at 170-171. The Supreme Court has held that such notice should be provided in the early stages of litigation, noting the "wisdom and necessity" of early court involvement in managing opt-in cases. *Id.* at 171.

Prompt notice to potential opt-in plaintiffs is essential because in an FLSA representative action the statute of limitations on an individual worker's claims are not tolled until that worker "opts in" or files a consent form with the Court. 29 U.S.C. § 256(b). In consideration of running statute of limitations, courts have moved quickly to certify representative actions and facilitate notice by granting requests for expedited discovery of employee names and addresses. Soler v. G&U, Inc., 86 F.R.D. 524 (S.D.N.Y. 1980).

This Court should facilitate collective notice as promptly as possible in light of significant practical barriers to the assertion of rights by migrant workers from foreign countries. When deciding whether to authorize collective notice under § 216(b), courts should consider barriers to workers' awareness and/or knowledge of their rights and procedures for asserting those rights. *See, e.g.*, Soler 86 F.R.D. at 529 (where workers in proposed class were monolingual Spanish-speakers and had migratory jobs, "the Court cannot presume that all or even most of those interested in pursuing a legal remedy were aware of the opportunity at hand"); Riojas v. Seal Produce, Inc., 82 F.R.D. 613, 619 (S.D. Tex. 1979) ("In such a case as this where the alleged class members are migratory and difficult to locate, it is nothing more than an act of fundamental fairness to allow the Texas Rural Legal Aid to notify these farm workers of allegedly illegal activities and the availability of legal action."); Neizil v. Williams, No. 82-3-Civ.-Oc., 1983 U.S. Dist. LEXIS 20085, at *5 (M.D. Fla. Jan. 12, 1983) ("Notice to potential FLSA class members is particularly appropriate under circumstances such as the case at bar where the class members are indigent migrant farm workers and the action has been brought by a non-profit legal assistance organization.").

The present case presents barriers to potential opt-in plaintiffs learning of the present lawsuit and their right to join. Potential class members are migrant workers from Central America who were employed with Defendants between March 17, 2005 and March 17, 2008 and lived on site in employer-provided housing during that time. (Doc. 64 ¶ 2) Plaintiffs allege that many workers were evicted from those employer-provided apartments when their employment ended or they were detained by immigration. (Doc. 64 ¶¶ 196-98, 202) Most potential class members speak little or no English and may be unaware of their legal rights in the United States. *See* Ex. 19-31, at ¶ 1. Putative class members may also have feared litigating their claims

individually because of the extreme retaliation Defendants allegedly visited upon those who sought redress for non-payment. (Doc. 64 ¶¶ 195-205). Prompt notice will ensure workers have knowledge of the case and will allow workers to weigh participation in a pressure-free environment -- the only way to effectuate the remedial purpose of the FLSA's drafters. Soler, 86 F.R.D. at 530 ("Testifying before Congress in 1949, the Secretary of Labor stated that the purpose of the Act, to insure that employees receive the requisite minimum wage, 'can only be served completely and effectively when employers cannot be relieved of their obligations through the inertia or ignorance of their employees.") (internal citation omitted). Providing notice early in the case promotes the "broad remedial purpose" of the FLSA and promotes the efficient case management by insuring that similar claims are combined in one proceeding. Dybach v. Florida Dep't of Corr., 942 F.2d 1562, 1567 (11th Cir. 1991).

### A. Form of Notice

A copy of the notice Plaintiffs propose to send to class members is attached to Plaintiffs' Motion as Exhibit 32. Once the Court and the parties have agreed upon the content of the notice, Plaintiffs will ensure it is translated into Spanish before distribution to class members, as Spanish is apparently the native language of the majority of the putative class. Plaintiffs propose to send this notice in English and Spanish by first class mail. Plaintiffs' counsel will bear the cost of mailing the notices. Should notice through traditional mail prove ineffective, Plaintiffs propose that the notice information be disseminated to the putative class through Spanish language radio in the areas of the worksites in question and in Honduras, which appears to be the home country of the majority of members of the putative class. *See* Ex. 19-31 at ¶ 1. Plaintiffs' counsel would bear associated costs.

### B. Plaintiff's Proposed Notice Should be Adopted and Potential Class Members Should be Given Three Months to File Consent Forms

Plaintiffs propose that putative class members have at least three months from the time notice issues to file their consent forms. This period of time is significantly less than opt-in periods adopted in recent cases similar to the present lawsuit involving low-wage foreign workers. *See* Recinos-Recinos v. Express Forestry, Inc., 233 F.R.D. 472, 482-83 (E.D. La. 2006) (granting 6 month opt-in period to Guatemalan tree-planters); Salinas-Rodriguez, 2005 U.S. Dist. LEXIS 39673 at * 14 (same); Rivera v. Brickman Group, No. 05-1518, 2005 U.S. Dist. LEXIS 34976, at *2 (E.D. Pa. Dec. 22, 2005) (granting six month opt in period to migrant, "transient" nursery workers). *See e.g.* Roebuck, 239 F. Supp. at 240 (nine month opt-in period for migrant farmworkers). *See also* Lima, 493 F. Supp. 2d at 804 ("Longer opt-in periods have been granted in cases where potential plaintiffs are hard to contact due to their migration or dispersal."); Camp v. Progressive Corp., 2002 U.S. Dist. LEXIS 21903, at *21-22 (setting four month opt-in period for English-speaking insurance adjusters, "considering the upcoming holiday season.").

### C. Information Needed to Facilitate Notice

Plaintiffs request that the Court order Defendants to provide Plaintiffs with all addresses and telephone numbers of the class members in order to assist with issuance of the notice. Such information is routinely provided in FLSA actions. *See* Hoffmann-La Roche, Inc., 493 U.S. 165 (affirming order compelling discovery of names and addresses of potential class members); De La Rosa Ortiz v. Rain King, Inc., No. Civ.A. H-02-4012, 2003 W.D. 23741409 at * 1 (S.D. Tex. March 10, 2003) (same); Salinas-Rodriguez, 2005 U.S. Dist. LEXIS 39673 at *11-12; Rivera, 2005 U.S. Dist. LEXIS 34976 at * 4; Williams v. Bally's La., Inc., No. 05-5020, at * 9; Bursell v. Tommy's Seafood Steakhouse, No. H-06-0386, 2006 U.S. Dist. LEXIS 80526, at *8-9 (S.D. Tex. Nov. 3, 2006) (names, addresses, and telephone numbers). The disclosure Plaintiffs seek is

endorsed by the relevant case law. The Court should order Defendants to disclose available contact information for potential class members to the Plaintiffs.

## V.   CONCLUSION

For all the reasons discussed herein, the Court should enter an Order (1) conditionally certifying this action on behalf all non-supervisory interior workers employed by Defendants on work crews overseen by Abelardo Rodriguez, H&H Associates and/or by Alcantara Carpentry who performed work at Audubon Pointe, Audubon Village, Audubon Park and/or Audubon Grove between March 17, 2005 and March 17, 2008; (2) requiring Defendants to provide Plaintiffs, in computer readable form, all addresses and telephone numbers for the class members; (3) authorizing Plaintiffs to issue a notice substantially similar to the proposed notice attached as Exhibit 32 to the potential members of the proposed opt-in class; and (4) giving the members of the class three months from the date that Defendants have produced names, last-known addresses and telephone numbers of potential class members to file consent forms to participate in this collective action.

Respectfully submitted this 24th day of October 2008.

    s/Vanessa Spinazola
    Vanessa Spinazola
    LSBN 31328
    The Pro Bono Project
    615 Baronne Street, Suite 201
    New Orleans, Louisiana 70113
    Tel: (504) 581-4043 x212
    Fax: (504) 566-0518

    Mary C. Bauer
    Virginia State Bar # 31388
    *Pro Hac Vice*
    Daniel Werner
    New York State Bar # 3969839
    *Pro Hac Vice*

Andrew H. Turner
Virginia State Bar # 48853
*Pro Hac Vice*
Immigrant Justice Project
Southern Poverty Law Center
400 Washington Avenue
Montgomery, Alabama 36104
Tel: (334) 956-8200
Fax: (334) 956-8481

Catherine K. Ruckelshaus
*Pro Hac Vice*
National Employment Law Project
80 Maiden Lane, Suite 509
New York, NY 10038
Tel: (212) 285-3025 x 306

Attorneys for Plaintiffs