UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDI GARCIA, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-1291** |
| **AUDUBON COMMUNITIES MANAGEMENT, LLC, ET AL.** | **SECTION: "C"(5)** |

## ORDER AND REASONS[1]

This matter comes before the Court on the parties' Joint Motion for Approval of Settlement ("Joint Motion"). (Rec. Doc. 124). This case presents a settlement of claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.* (2008) and also under the Victims of Trafficking Protection Act ("VTPA"), 18 U.S.C. § 1595 (2008). The Court has undertaken a thorough review of the proposed settlement agreement. After considering the parties' Joint Motion and the applicable law, the Court hereby GRANTS the parties' Joint Motion for the following reasons.

I.  **Background**

The fourteen named plaintiffs asserted claims under the FLSA for unpaid minimum and overtime wages. (Rec. Doc. 1). The fourteen named plaintiffs were allegedly employed by the defendants in the maintenance and rehabilitation of their multifamily residential complexes

---

[1] Daniel Lai, a third-year student at Tulane Law School, assisted in the research and preparation of this opinion.

located in Algiers, Louisiana, Bridge City, Louisiana, Baton Rouge, Louisiana, and Jackson, Mississippi. (Rec. Doc. 64 ¶¶ 167-176). On September 23, 2008, twelve of the fourteen named plaintiffs sought to assert their FLSA claims on behalf of themselves and all others similarly situated pursuant to 29 U.S.C. § 216(b). (Rec. Doc. 64 ¶¶ 206-210). The named plaintiffs then moved for certification of their case as a FLSA collective action pursuant to 29 U.S.C. § 216(b) on October 24, 2008, which is currently pending. (Rec. Doc. 80). Twenty-five other individuals have filed with the Court consent-to-sue forms to indicate their desire to join the named plaintiffs' putative FLSA collective action. (Rec. Doc. 1-3, 16, 42-2, 50-2). Therefore, thirty-nine (39) individuals present FLSA claims in this case. The fourteen named plaintiffs have also pleaded claims under the VTPA. (Rec. Doc. 1). The defendants dispute the validity of all claims asserted. (Rec. 40, 124-1 at 2).

## II.    The Terms of the Agreement

To settle their claims under the FLSA and the VTPA, defendants have agreed to pay $170,000 to the thirty-nine named and opt-in plaintiffs. Defendants have also agreed to pay $45,000 in fees and costs to plaintiffs' counsel, for a total payment of $215,000. For the purposes of settlement, plaintiffs are treated as a certified collective action under FLSA. Defendants do not concede liability as to plaintiffs claims.

Of the $170,000, plaintiffs propose that 80% (or $136,000) compensate their claims for unpaid wages and the remaining 20% (or $34,000) compensate claims for involuntary servitude and retaliation. The $136,000 constitutes 83.95% of all contract wages claimed by the plaintiffs and each plaintiff would receive an amount between 4.2% and 11.90% of the liquidated damages they would be due if they had succeeded on the merits at trial. In terms of FLSA minimum wage

and overtime payments, the $136,000 constitutes 52.1% and 55.95% of their claimed FLSA minimum and overtime wages plus 100% liquidated damages paid on the minimum and overtime wages received.  As to the $34,000, each of the fourteen named plaintiffs who have asserted claims under the VTPA would receive an additional payment of $2400 each for a total of $33,600.  The remaining $400 would compensate five of the twelve named plaintiffs who asserted claims of retaliatory eviction at a rate of $80 per person.  The $80 payment is based on the weekly market rate value of the lease at $40 and an additional $40 for liquidated damages. All named and opt-in plaintiffs have been consulted and agree to this allocation.

### III.　FLSA Standard

The Court must approve any settlement reached by the parties which resolves the claims in this action brought under Section 16(b) of the FLSA.  A court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions" in order to approve a settlement proposed by an employer and employees of a FLSA suit and enter a stipulated judgment.  *Lynn's Food Stores*, 679 F.2d at 1355; *Camp v. Progressive Corp.*, 2004 WL 2149079 (E.D.La. Sep. 23, 2004) (Wilkinson, J.).  The court has discussed the analysis in connection with a court's determination to approve an agreement reached to settle FLSA claims brought under Section 16(b) in a previous decision, *Collins et al. v. Sanderson Farms, Inc.*, 568 F.Supp.2d 714 (E.D.La. 2008).

#### A.　Bona Fide Dispute

Congress recognized that "due to the unequal bargaining power as between employer and

employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706-07 (1945). The provisions of Section 16(b) of the FLSA are mandatory, and not subject to bargaining and negotiation between employees and employers. *Id*. at 707; *Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dept. of Labor, Employment Standards Admin., Wage and Hour Div.*, 679 F.2d 1350 (11th Cir.1982). Under Section 16(b), an employer who violates Section 206 or 207 is liable to the employees affected in the amount of their unpaid minimum or overtime compensation and for an additional equal amount as liquidated damages. 29 U.S.C. § 216(b).

Due to the special character of the substantive labor rights involved, the Court's role in this situation is in some ways comparable to, but in other ways quite distinguishable from, that of a court in a settlement of a class action brought pursuant to FED.R.CIV.P. 23. *Collins*, 568 F.Supp.2d at 717. The Supreme Court discussed this special character of the substantive labor rights in *O'Neil*, where the Supreme Court did not allow employees to waive their right to liquidated damages as granted under the FLSA. *O'Neil*, 324 U.S. at 706-07. In *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946), the Supreme Court further held that employees could not waive or agree to release an employer from liquidated damages in return for full payment of wages due and unpaid, even where there was a bona fide dispute as to whether the FLSA covered the employees concerned.

Therefore the primary focus of the Court's inquiry in deciding whether to approve the settlement of a FLSA collective action is not on due process concerns as it would be for a Rule 23 class action. *Collins*, 568 F.Supp.2d at 719; *see Woods v. New York Life Ins. Co.*, 686 F.2d

578, 579-80 (7th Cir.1982); *Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859, 863-64 (9th Cir.1977). Rather the Court primarily focuses on ensuring that an employer does not take advantage of its employees in settling their claim for wages. *Collins*, 568 F.Supp.2d at 719; *see Lynn's Food Stores*, 679 F.2d at 1354; *Hitchcock v. Orange County, Fla.*, 2006 WL 3614925, 4 (M.D.Fla. Dec. 11, 2006). In this light, a court must approve any settlement of claims brought under Section 16(b) even if there is only one plaintiff, where analogy to Rule 23 would have limited usefulness. *Collins*, 568 F.Supp.2d at 719; *see e.g., Stalnaker v. Novar Corp.*, 293 F.Supp.2d 1260 (M.D.Ala.2003); *Walker v. Home at Last of Brevard, Inc.*, 2007 WL 2698535 (M.D.Fla. Sep. 12, 2007); *Russell v. Circle L Roofing, Inc.*, 2007 WL 1549307 (M.D.Fla. May 28, 2007). Consequently the Court's role is driven at least as much by the substantive labor rights underlying the claims as it is by the collective nature of the lawsuit. *Collins*, 568 F.Supp.2d at 719.

In light of the nature of the substantive labor rights, as discussed above in *O'Neil* and *Gangi*, the Court understands that the necessary inquiry into whether there is indeed a "bona fide dispute" is more robust. *Collins,* 568 F.Supp.2d at 719-20. The Court must "do more than just take at face value the parties' assertion that there is 'no doubt' that the lawsuit involves a bona fide dispute over FLSA coverage." *Id*.

### B.   Fair and Reasonable

In *Hoffmann-La Roche, Inc., v. Sperling*, 493 U.S. 165 (1989), the Supreme Court held that § 216(b) "must grant the [district] court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise

contrary to the statutory commands of the Federal Rules of Civil Procedure." *Id*. at 170.   No reason exists to conclude that similar discretion does not lie to fashion the appropriate procedures and standards for approving settlement of actions brought under § 216(b). *See Shushan v. University of Colo., at Boulder*, 132 F.R.D. 263, 267-68 (D.Colo. 1990).

Although Rule 23 does not control FLSA collective actions, many courts have adopted many of Rule 23's procedures in such actions by analogy, in an exercise of their discretion to manage the litigation of collective actions under § 216(b). *See, e.g., Brask v. Heartland Automotive Services, Inc.*, 2006 U.S. Dist. LEXIS 62313, 2006 WL 2524212, *2 (D.Minn. 2006); *Hitchcock v. Orange County, Fla.*, 2006 U.S. Dist. LEXIS 89504, 2006 WL 3614925, *5 (M.D.Fla. 2006).  This Court has adopted many of Rule 23's procedures in such actions by analogy in *Collins*, 568 F.Supp.2d at 721.  Under Rule 23, a court should consider the following six factors to determine whether a settlement is "fair, adequate and reasonable": (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives and absent class members." *Camp*, 2004 U.S. Dist. LEXIS 19172, 2004 WL 2149079 (citing *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)).  Although the Court believes that analogy to Rule 23 is generally appropriate, in accord with the numerous other courts who have considered such factors to determine whether to approve a settlement of a collective action under § 216(b), the Court will adopt or vary these factors in their application in light of the special role of the Court in settlement of FLSA claims.

### IV. FLSA Analysis

#### A. *Bona Fide* Dispute

Defendants raise a series of defenses that they argue undermine plaintiffs' allegations. A common element in the discussion of each dispute, given the posture of this case at the time of settlement, is that certain discovery has yet to be conducted. Indeed, many of the defenses raised are primarily questions of fact and not law. Although it is difficult for the Court to thoroughly evaluate the basis for the defenses raised, as a matter of law, the defenses raised are colorable claims.

First, defendants dispute jurisdiction and venue. (Rec. Doc. 124-2 at 10.) The plaintiffs alleged that they were employed by the Defendants and that these thirteen LLCs were essentially alter egos of one another and of individual defendant Andrew Schwarz, a New Orleans resident and managing partner and owner. Defendants filed a motion to dismiss against three defendants on the basis of lack of jurisdiction as to one and improper venue as to the two defendants. The plaintiffs have not yet conducted jurisdictional discovery, although they did so move after defendants filed their motion to dismiss. The record does contain evidence supporting plaintiffs' claims, namely plaintiffs' sworn affidavits that they were subject to the same management, work schedule, and rates of pay and performed the same job tasks when they worked at different properties. At the same time, if discovery failed to support plaintiffs' allegations, the plaintiffs risk the division of this action into multiple suits in different courts.

Defendants also dispute that they are even covered by FLSA. (Rec. Doc. 124-2 at 10-11.) First, they dispute whether defendants' activities fit within the FLSA parameters of 29 U.S.C. §§ 203 (b), (j) or (s). (relating to definitions of "commerce," "production," and

"enterprise.") Defendants deny engaging in interstate commerce. Defendants claim to be "independent, single-site residential complexes" that do not do business outside of their states of residence. (Rec. Doc. 124-2 at 10.) Notably, plaintiffs have not yet taken any jurisdictional discovery to dispute this defense. Second, defendants contest whether for the purposes of FLSA, defendants could be considered plaintiffs' employer. (Rec. Doc. 124-2 at 11.) Discovery to date suggests that plaintiffs have a colorable claim of FLSA employer status. Deposition testimony and evidence appears to indicate that defendants did at times make payments directly to one or more plaintiffs and did at some point direct and/or terminate individual plaintiffs' supervisors. At the same time, defendants deny - and plaintiffs currently lack "dispositive evidence" of - many of the typical acts associated with FLSA employer status including supervision, setting hours, making assignments and determining wage rates. Determining the status of employer is a complicated factual and legal issue, made more complicated by the multiple properties and alleged sub-contractors involved.

Defendants also raise two defenses where additional evidence is likely to be difficult to secure. First, defendants dispute the computation of wages. As an initial matter, neither party claims to have complete records of plaintiffs' work histories to support plaintiffs' calculation of promised wage rates, hours and dates of employment. (Rec. Doc. 124-2 at 13.) A third party may have custody of these records, but thus far efforts to secure the records have been unsuccessful. (Id.) Second, defendants dispute plaintiffs' allegations of retaliatory eviction. Although plaintiffs have attempted through discovery to obtain additional evidence, the United States government has moved to quash the subpoenas of the law enforcement officials involved based on executive privilege. (Rec. Doc. 124-2 at 14.) In these cases, the uncertainty at trial for

either party is significantly heightened given the possible unavailability of this evidence.

Last, defendants claim they acted based on their good faith belief that they did not employ the plaintiffs and therefore did not knowingly violate the FLSA.  (Rec. Doc. 124-2 at 14.)  As such, defendants contest whether plaintiffs' are entitled to the three-year statute of limitations.  To date, the plaintiffs lack evidence supporting their claim of a willful violation and some plaintiffs' claims may be at risk if willfulness is not shown.

Based on the above reasoning, the Court finds that there is a *bona fide* dispute between the parties, particularly with regard to FLSA coverage.  Although these disputes appear to be primarily factual, and discovery on certain aspects has yet to be conducted, the Court is nevertheless convinced, based on the evidence so far, that genuine uncertainty as to the outcome exists for both sides.

### B. Fair and Reasonable

**(1) The existence of fraud or collusion behind the settlement.**

The Court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary.  *Camp*, 2004 WL 2149079 at *7 (citing 4 NEWBERG ON CLASS ACTIONS § 11.51 (4th ed.)).  The Court finds no evidence here of any fraud or collusion.  In approximately ten months, the parties have taken exchanged over three thousand pages through written discovery.  (Rec. Doc. 124-2 at 15.)  The parties filed multiple substantive motions, but also jointly requested a stay of proceedings in which to conduct good faith negotiations.  The Court finds that the Settlement Agreement (Rec. Doc. 124-4) was the result of good faith negotiations and no evidence of fraud or collusion exists.

**(2) The complexity, expense, and likely duration of the litigation.**

**(3) The stage of the proceedings and the amount of discovery completed.**

The Court concludes that these two factors weigh heavily in favor of finding that the settlement is fair and reasonable. This case involves multiple properties and complex factual and legal issues regarding the liability of defendants and their alleged sub-contractors. In addition, if this Court denied plaintiffs' motion to certify the FLSA or defendants otherwise succeeded in their efforts to defend these relatively small claims as individual suits, trial in this matter quickly becomes uneconomical .

While a certain amount of discovery has been conducted to date, the parties note that the next stage of discovery would be significantly more expensive. The parties have not yet taken the plaintiffs' depositions. The costs would also increase because since this suit was first instituted, the plaintiffs are now geographically dispersed, including some to foreign countries. The Court also notes that several dispositive or substantive motions were filed, but not ruled upon, based on the parties' representations that they were engaged in good faith negotiations. (Rec. Doc. 80, 82, 87).

**(4) The probability of plaintiffs' success on the merits**

The defendants raise several possible defenses, some discussed *supra*, that they would raise in motions practice or trial. Plaintiffs' counsel does believe their case to be strong, but do note several areas of discovery yet to be conducted, which could significantly impact the case. (Rec. 124-2 at 15, 17.) The Court agrees that plaintiffs' case appears the more meritorious at this particular stage of the litigation, but also acknowledges that this case - perhaps more so than others - could change significantly before trial.

10

**(5) The range of possible recovery**

The proposed settlement recovers approximately 52.1% to 55.95% of plaintiffs' total possible recovery under FLSA. (Rec. Doc. 124-5.) (The difference in percentage is from the change in the FLSA minimum wage during the relevant time period.) (Id.) If the Court only examines plaintiffs' wage claims, each plaintiff receives approximately 83.95% of the wages she or he claimed to have been promised and not paid. (Id.) In terms of the FLSA retaliation claims asserted by five plaintiffs, the settlement provides payments of $80 per plaintiff. The $80 payment includes $40 in liquidated damages and $40 in damages (based on one-fourth of the estimated $160 weekly market value of the lease. Such recovery is within the range previously approved by this Court, given the uncertainties of discovery, trial, and appeal. *Collins*, 568 F.Supp.2d at 727.

**(6) The opinions of class counsel, class representatives and absent class members**

The parties join in requesting approval of the settlement, which was arrived at after extensive negotiation by class counsel. The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement. *Cotton*, 559 F.2d at 1330. However, the Court must keep in mind that a potential conflict of interest always exists between an attorney and a class. *In re Employee Benefit Plans Securities Litigation*, 1993 WL 330595, *5 (D.Minn. 1993) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2nd Cir. 1974). According to plaintiffs' counsel, all the present plaintiffs, including those named and those opting-in, have received a full description of the proposed settlement and their individual settlement amount. All have consented to participate and therefore there are no absent class members. The Court finds no evidence that plaintiffs' counsel have not worked in good faith to

secure a good settlement.

## V.  Reasonable Attorney's Fees

As part of its fairness determination, the Court must also determine that the proposed attorney's fees are reasonable.  *Camp*, 2004 WL 2149079 at *18 (citing *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849-50 (5th Cir. 1998).   In this case, the Court does not have to apportion the fees among plaintiffs' counsel, as they have already agreed to divide per their private fee-sharing agreement, a procedure approved by Fifth Circuit.  *Longden v. Sunderman*, 979 F.3d 1095, 1101 (5th Cir. 1992).

The Fifth Circuit employs the lodestar method for determining the reasonableness of attorney's fees in FLSA collective actions,  *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999), which is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work.  *Id.*  The court may then decrease or enhance the lodestar based on the relative weights of twelve factors (as amended by subsequent law) set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), but may not adjust the lodestar award if the creation of such award already took that factor into account, which would result in impermissible double-counting.  *Id.*  The Court finds that Plaintiffs' counsel have provided sufficient proof of their lodestar hours,  Rec. Doc. 124, Ex. B-G, (billing records and affidavit); in addition, defendants do not oppose the calculations.  The Court finds the hourly rates charged by plaintiffs' counsel and the amount of hours worked to be

reasonable based on the prevailing market rates.[2] Additional factors from *Johnson*, including the complexity of the procedural and factual issues, the inability of plaintiffs' counsel to handle other matters due the total hours consumed by this case, and the reasonable degree of success in the terms of the settlement, justify the lodestar of $34,494.11. In addition, the $45,000 total award, which includes $10,505.89 for costs, represents only 26.025% of hours actually billed by counsel. (Rec. Doc. 124-2 at 19.)

Courts have endorsed the practice of using the other method of determining reasonableness of fees in class actions, percentage of recovery, to double check the fee. *See In re Linerboard Antitrust Litigation*, 2004 WL 1221350, *3 (E.D.Pa. 6/2/2004). Employing the percentage of recovery method as a cross-check, the $34,494.11. award amounts to 16% of the total settlement amount of $215,000 (including costs and fees). The percentage of this award is lower than the caselaw would support. *See, e.g., In re Harrah's Entertainment, Inc.*, 1998 WL 832574, *4 (E.D.La. 11/25/1998) (Clement, J.) (noting that it is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third); *In re Prudential-Bache Energy Income P'ship Secs. Litig*, 1994 WL 150742, *1-2, 4 (E.D.La. 4/13/1994) (Livaudais, J.) (noting that awards in common fund cases have historically been computed typically in the 25% to 33% range and was intended to approximate what private counsel ordinarily would charge in a contingent fee contract, and listing awards in cases from this district). The Court finds the

---

[2] The billing rates for plaintiffs' counsel are as follows: Daniel Werner, $310 per hour; Catherine Ruckelshaus, $325 per hour; Laura Moskowitz, $200 per hour; Andrew H. Turner, $215 per hour; Vanessa Spinazola, $200 per hour; paralegal Rebecca Watson, $50 per hour; and paralegal Jan Lanier, $50 per hour. Rec. Doc. 124, Ex. B-G. The proposed billing rates of plaintiffs' counsel are reasonable based on prevailing market rates. See Rec. Doc. 124, Ex. H (Nat'l Law Journal 2008 survey listing billing rates, categorized by seniority/experience, for several local New Orleans private firms.

$34,494.11 attorney's fees award and $10,505.89 for costs as reached in the settlement in this case to be reasonable.

**VI.     Conclusion**

Accordingly,

IT IS ORDERED that the parties' Joint Motion for Approval of Settlement is GRANTED.  (Rec. Doc. 124).  The terms of the ratified Settlement Agreement submitted as Exhibit A to the parties' Joint Motion are SO ORDERED.

IT IS FURTHER ORDERED that the award of the $45,000 in attorneys' fees and costs is reasonable.

This Court retains jurisdiction to enforce the terms of the Settlement Agreement.

New Orleans, Louisiana, this 13th day of July, 2009.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE